IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PERSONALIZED MEDIA | § | |
| COMMUNICATIONS, L.L.C. | § | |
| v. | § | CIVIL ACTION NO. 2:08-cv-70 [CE] |
| | § | |
| MOTOROLA, INC., | § | JURY TRIAL DEMANDED |
| ECHOSTAR CORP., | § | |
| and DISH NETWORK CORP. f/k/a | § | |
| ECHOSTAR COMMUNICATIONS CORP. | § | |

**MOTOROLA INC.'S ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS TO PERSONALIZED MEDIA COMMUNICATIONS,
L.L.C.'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Pursuant to the Court's Docket Control Order entered February 3, 2009 (Docket

No. 49), Defendant Motorola, Inc. ("Motorola") answers the Amended Complaint For

Patent Infringement filed by Plaintiff Personalized Media Communications, L.L.C.

("PMC") (Docket No. 86) ("Amended Complaint") and counterclaims as follows.  All

averments and allegations not expressly admitted herein are denied.

## NATURE OF THE ACTION

1.      Motorola admits that PMC purports to bring an action for patent

infringement under 35 U.S.C. § 271, and that said action seeks injunctive relief and

monetary damages.  Except as expressly admitted, Motorola denies each and every

allegation of paragraph 1 directed to Motorola.  Motorola lacks knowledge or information

sufficient to form a belief as to the truth of the allegations of paragraph 1 directed to other

defendants and on that basis denies these allegations.

## THE PARTIES

2.      Motorola is informed and believes that Plaintiff PMC is a corporation

organized and existing under the laws of the State of Delaware, with its principal place of

business at 708 3rd Avenue, 35th Floor, New York, NY 10017.

3.      Motorola admits that United States Patent Nos. 4,965,825; 5,109,414;

5,233,654; 5,335,277; and 5,887,243 (hereinafter collectively "the Asserted PMC

Patents") are entitled "Signal Processing Apparatus and Methods" and that John C.

Harvey and James W. Cuddihy are identified as the purported inventors on the face of the

Asserted PMC Patents.  Motorola denies that the Asserted PMC Patents were duly and

legally issued.  Except as expressly admitted or denied, Motorola lacks knowledge or

information sufficient to form a belief as to the truth of the allegations of paragraph 3 and

on that basis denies these allegations.

4.      Admitted.

5.      Motorola lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 5 and on that basis denies these allegations.

6.      Motorola lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 6 and on that basis denies these allegations.

<u>**JURISDICTION AND VENUE**</u>

7.      Motorola admits that PMC purports to bring an action arising under the

United States Patent Laws.

8.      Motorola admits that PMC purports to bring an action arising under the

United States Patent Laws and that this Court would have exclusive subject matter

jurisdiction over such action.

9.      To the extent paragraph 9 contains conclusions of law, no answer is

required but Motorola denies that it has committed or continues to commit acts of

infringement.  Motorola admits that it has transacted business in the Eastern District of

Texas, but lacks knowledge or information sufficient to form a belief as to the truth of the

additional allegations of paragraph 9 directed to itself and other defendants and on that

basis denies these allegations.

10.     To the extent paragraph 10 contains conclusions of law, no answer is

required but Motorola denies that it has committed or continues to commit acts of

infringement.  Motorola admits that it has transacted business in the Eastern District of

Texas, but lacks knowledge or information sufficient to form a belief as to the truth of the

additional allegations of paragraph 10 directed to itself or other defendants and on that

basis denies these allegations.

## <u>INFRINGEMENT OF THE ASSERTED PMC PATENTS</u>

11.     Motorola admits that United States Patent No. 4,965,825 ("the '825

Patent"), entitled "Signal Processing Apparatus and Methods," issued on October 23,

1990 purporting to claim the priority date of U.S. Patent Application Serial No. 317,510,

filed on November 3, 1981 (the "1981 Harvey Application"), and that John C. Harvey

and James W. Cuddihy are designated as the purported inventors on the face of the

patent.  Motorola denies that a true and correct copy of the '825 Patent was attached as

Exhibit "A" to PMC's Amended Complaint.  Motorola denies that the '825 Patent was

duly and legally issued.  Except as expressly admitted or denied, Motorola lacks

knowledge or information sufficient to form a belief as to the truth of the allegations of

paragraph 11 and on that basis denies these allegations.

12.     Motorola admits that United States Patent No. 5,109,414 ("the '414

Patent"), entitled "Signal Processing Apparatus and Methods," issued, purporting to

claim the priority date of the 1981 Harvey Application, and that John C. Harvey and James W. Cuddihy are designated as inventors on the face of the patent.  Motorola denies that a true and correct copy of the '414 Patent was attached as Exhibit "B" to PMC's Amended Complaint.  Motorola denies that the '414 Patent was duly and legally issued. Motorola denies that the '414 Patent issued on April 28, 1982.  Except as expressly admitted or denied, Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 and on that basis denies these allegations.

13.     Motorola admits that United States Patent No. 5,233,654 ("the '654 Patent"), entitled "Signal Processing Apparatus and Methods," issued on August 3, 1993 purporting to claim the priority date of the 1981 Harvey Application, and that John C. Harvey and James W. Cuddihy are designated as the purported inventors on the face of the patent.  Motorola denies that a true and correct copy of the '654 Patent was attached as Exhibit "C" to PMC's Amended Complaint.  Motorola denies that the '654 Patent was duly and legally issued.  Except as expressly admitted or denied, Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 and on that basis denies these allegations.

14.     Motorola admits that United States Patent No. 5,335,277 ("the '277 Patent"), entitled "Signal Processing Apparatus and Methods," issued on August 2, 1994 purporting to claim the priority date of the 1981 Harvey Application, and that John C. Harvey and James W. Cuddihy are designated as the purported inventors on the face of the patent.  Motorola denies that a true and correct copy of the '277 Patent was attached as Exhibit "D" to PMC's Amended Complaint.  Motorola denies that the '277 Patent was

duly and legally issued.  Except as expressly admitted or denied, Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 and on that basis denies these allegations.

15.     Motorola admits that United States Patent No. 5,887,243 ("the '243 Patent"), entitled "Signal Processing Apparatus and Methods," issued on March 23, 1999 purporting to claim the priority date of the 1981 Harvey Application, and that John C. Harvey and James W. Cuddihy are designated as the purported inventors on the face of the patent.  Motorola denies that a true and correct copy of the '243 Patent was attached as Exhibit "E" to PMC's Amended Complaint.  Motorola denies that the '243 Patent was duly and legally issued.  Except as expressly admitted or denied, Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 and on that basis denies these allegations.

16.     Motorola admits that it markets, makes, uses, and/or sells broadband transmission products, content origination products, and head end products (collectively, "transmission equipment"), including the specific products identified in PMC's Amended Complaint.  Motorola denies that it markets, makes, uses, and/or sells transmission equipment that directly infringe, contributorily infringe, induce others to infringe, or are used to practice processes that infringe the Asserted PMC Patents.

17.     Motorola admits that it markets, makes, uses, and/or sells digital set-tops, including the specific products identified in PMC's Amended Complaint.  Motorola denies that it markets, makes, uses, and/or sells digital set-tops that directly infringe, contributorily infringe, induce others to infringe, or are used to practice processes that infringe the Asserted PMC Patents.

18.     Motorola admits that on May 24, 2010, it served upon PMC Motorola's Response to PMC's Third Set of Interrogatories (Nos. 7-8) and that the responses included lists of product names.  Motorola denies that all products identified in those responses are properly accused in this lawsuit, as the scope of accused products is governed by the Local Patent Rules.  Motorola also denies that it markets, makes, uses, and/or sells transmission equipment and digital set-tops that directly infringe, contributorily infringe, induce others to infringe, or are used to practice processes that infringe the Asserted PMC Patents.  Motorola denies the remaining allegations in paragraph 18.

19.     Motorola admits that it markets, makes, uses, and/or sells software products and services that are used in conjunction with advanced set-tops, including the operating system software and application software running on the Motorola digital interactive set-tops that Motorola markets and sells under the OCAP Platform product line.  Motorola admits that it designs, deploys, markets, and sells digital interactive television (ITV) system products that provide ITV content.  Motorola denies that it markets, makes, uses, and/or sells digital software products and services that directly infringe, contributorily infringe, induce others to infringe, or are used to practice processes that infringe the Asserted PMC Patents.

20.     Motorola admits that PMC served its Infringement Contentions on July 28, 2009, containing assertions of patent infringement.  Motorola has objected to those contentions as lacking sufficient detail to meet the requirements of the Local Patent Rules.  Motorola denies the remaining allegations in paragraph 20.

21.     To the extent paragraph 21 contains conclusions of law, no answer is

required.  To the extent paragraph 21 contains factual allegations, Motorola denies the allegations of paragraph 21.

22.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and on that basis denies these allegations.

23.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 and on that basis denies these allegations.

24.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and on that basis denies these allegations.

25.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 and on that basis denies these allegations.

26.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 and on that basis denies these allegations.

27.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 and on that basis denies these allegations.

28.     Motorola admits that its predecessor General Instrument received letters concerning some of the Asserted PMC Patents.  To the extent paragraph 28 contains allegations relating to parties other than Motorola, Motorola lacks knowledge or information sufficient to form a belief as to the truth of those allegations and on that basis denies that allegation.  Motorola denies the remaining allegations of paragraph 28 directed to Motorola.

29.     Motorola denies each and every allegation of paragraph 29 directed to Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 directed to other defendants and on that basis

denies these allegations.

30.     Motorola denies each and every allegation of paragraph 30 directed to Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 directed to other defendants and on that basis denies these allegations.

## COUNT I (All Defendants)

### (Patent Infringement of the '825 Patent)

31.     Motorola incorporates by reference its answers to paragraphs 1-30 as if fully restated herein.

32.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 and on that basis denies these allegations.

33.     Motorola admits that claims 3, 16, and 17 of the '825 Patent were confirmed as patentable by the Patent and Trademark Office during the reexamination of the '825 Patent initiated by a third party.  Except as expressly admitted, Motorola denies each and every allegations of paragraph 33 directed to Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 directed to other defendants and on that basis denies these allegations.

34.     Motorola denies each and every allegation of paragraph 34 directed to Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 directed to other defendants and on that basis denies these allegations.

## COUNT II (All Defendants)

### (Patent Infringement of the '414 Patent)

35.     Motorola incorporates by reference its answers to paragraphs 1-34 as if fully restated herein.

36.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 and on that basis denies these allegations.

37.     Motorola admits that claims 7, 10, 13, and 23 of the '414 Patent were confirmed as patentable by the Patent and Trademark Office during the reexamination of the '414 Patent initiated by a third party.  Except as expressly admitted, Motorola denies each and every allegations of paragraph 37 directed to Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37 directed to other defendants and on that basis denies these allegations.

38.     Motorola denies each and every allegation of paragraph 38 directed to Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 directed to other defendants and on that basis denies these allegations.

## COUNT III (All Defendants)

### (Patent Infringement of the '654 Patent)

39.     Motorola incorporates by reference its answers to paragraphs 1-38 as if fully restated herein.

40.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 and on that basis denies these allegations.

41.     Motorola admits that claims 7-10 and 59 of the '654 Patent were

confirmed as patentable by the Patent and Trademark Office during the reexamination of the '654 Patent initiated by a third party.  Except as expressly admitted, Motorola denies each and every allegations of paragraph 41 directed to Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 directed to other defendants and on that basis denies these allegations.

42.     Motorola denies each and every allegation of paragraph 42 directed to Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 directed to other defendants and on that basis denies these allegations.

## COUNT IV (All Defendants)

### (Patent Infringement of the '277 Patent)

43.     Motorola incorporates by reference its answers to paragraphs 1-42 as if fully restated herein.

44.     Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44 and on that basis denies these allegations.

45.     Motorola admits that claims 3, 11, 14, 19, 20, 22-26, 28, 37, 41-43 and 55 of the '277 Patent were confirmed as patentable by the Patent and Trademark Office during the reexamination of the '277 Patent initiated by a third party.  Except as expressly admitted, Motorola denies each and every allegations of paragraph 45 directed to Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 directed to other defendants and on that basis denies these allegations.

46.     Motorola denies each and every allegation of paragraph 46 directed to

Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 46 directed to other defendants and on that basis

denies these allegations.

## COUNT V (All Defendants)

### (Patent Infringement of the '243 Patent)

47.     Motorola incorporates by reference its answers to paragraphs 1-46 as if

fully restated herein.

48.     Motorola lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 48 and on that basis denies these allegations.

49.     Motorola admits that claims 13 and 15 of the '243 Patent were confirmed

as patentable by the Patent and Trademark Office Examiner responsible for conducting

the reexamination of the '243 Patent initiated by a third party.  Except as expressly

admitted, Motorola denies each and every allegations of paragraph 49 directed to

Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 49 directed to other defendants and on that basis

denies these allegations.

50.     Motorola denies each and every allegation of paragraph 50 directed to

Motorola.  Motorola lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 50 directed to other defendants and on that basis

denies these allegations.

51.     Paragraph 51 does not include an allegation that requires a response, but to

the extent it or the remainder of the Amended Complaint contains any allegations or

averments, they are denied.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof which would otherwise reside with PMC,

Motorola asserts its affirmative defenses as follows:

### FIRST AFFIRMATIVE DEFENSE
### (FAILURE TO STATE A CLAIM)

52.     PMC's Amended Complaint fails to state any claim upon which relief may

be granted.

### SECOND AFFIRMATIVE DEFENSE
### (INVALIDITY)

53.     The Asserted PMC Patents and each of their claims are invalid for failure

to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103, and 112.

### THIRD AFFIRMATIVE DEFENSE
### (LACHES, WAIVER AND/OR EQUITABLE ESTOPPEL)

54.     On information and belief, the relief sought by PMC is barred in whole or

in part under one or more of the doctrines of laches, waiver, and/or equitable estoppel.

### FOURTH AFFIRMATIVE DEFENSE
### (LACK OF STANDING)

55.     On information and belief, the relief sought by PMC is barred in whole or

in part because PMC lacks standing in this action.

### FIFTH AFFIRMATIVE DEFENSE
### (PROSECUTION HISTORY ESTOPPEL)

56.     On information and belief, the relief sought by PMC is barred in whole or

in part under the doctrine of prosecution history estoppel.

**SIXTH AFFIRMATIVE DEFENSE**
**(LACK OF DAMAGES)**

57.     On information and belief, the damages relief sought by PMC is barred in whole or in part because of PMC's or its licensees' failure to comply with 35 U.S.C. § 287(a).

**SEVENTH AFFIRMATIVE DEFENSE**
**(UNENFORCEABILITY)**

58.     On information and belief, the relief sought by PMC is barred in whole or in part by the unenforceability of each of the Asserted PMC Patents.

**EIGHTH AFFIRMATIVE DEFENSE**
**(UNCLEAN HANDS)**

59.     On information and belief, the relief sought by PMC is barred in whole or in part by the doctrine of unclean hands.

**NINTH AFFIRMATIVE DEFENSE**
**(INEQUITABLE CONDUCT)**

60.     The applicants, the inventors, the prosecuting attorneys, one or more agents of PMC or its predecessors-in-interest, and others substantively involved in patent prosecution were under a duty of candor and good faith, including a duty of disclosure, in dealing with the U.S. Patent & Trademark Office ("USPTO").  As described herein, one or more of these persons violated this duty by withholding and misrepresenting material information, and committing other acts and omissions in connection with the prosecution of the Asserted PMC Patents and other related patents.  Such acts and omission were done with an intent to deceive or mislead the USPTO.  As a result, the Asserted PMC Patents are unenforceable because each was obtained from the USPTO through inequitable conduct.  In addition, each of the Asserted PMC Patents is unenforceable

because of a pattern of inequitable conduct that permeated, and continues to permeate, the prosecution and reexamination of the Asserted PMC Patents.

61.     The Asserted PMC Patents also are unenforceable due to inequitable conduct in connection with applications related to those that ultimately issued as the Asserted PMC Patents.  These actions were sufficient to cause the assigned examiner to issue a communication that states that applicants engaged in a pattern of misleading the USPTO and a pattern of misrepresentations contrary to their duties under 37 CFR §§ 10.85 and 1.56.  Applicant's pattern of violations of the duty of candor and good faith during prosecution of related patents render each of the Asserted PMC Patents unenforceable due to inequitable conduct.

62.     On November 3, 1981, a patent application was filed on behalf of John C. Harvey and James W. Cuddihy ("applicants").  That application was assigned Serial No. 06/317,510 ("the 1981 application"), and it ultimately issued as U.S. Patent No. 4,694,490 on September 15, 1987.  The '510 application was 44 pages of text.

63.     On February 14, 1986, applicants filed a continuation of the '510 application that was assigned Serial No. 06/829,531.  The '531 application ultimately issued as United States Patent No. 4,704,725 ("the '725 Patent") on November 3, 1987. The '531 application was based on the original 44-page specification filed as part of the 1981 application.

64.     On September 11, 1987, applicants filed a continuation-in-part application that was assigned Serial No. 07/096,096 ("the 1987 application").  This '096 continuation-in-part application ultimately issued as the '825 patent on November 23,

1990.  The 1987 application was 557 pages of text, and it deleted most of the material that was contained in the original 44-page 1981 application.

65.     On September 25, 1990, applicants filed a continuation application that was assigned Serial No. 07/588,126.  This application ultimately issued as the '414 patent on April 28, 1992.  The '414 patent is based on the 557-page 1987 application.  The '126 application did not incorporate by reference any part of the original 44-page application that was filed in 1981.

66.     On March 10, 1992, applicants filed a continuation application that was assigned Serial No. 08/849,226.  The '226 application ultimately issued as the '654 patent on August 3, 1993.  The '654 patent is based on the 557-page 1987 application.  The '226 application did not incorporate by reference any part of the original 44-page application that was filed in 1981.

67.     On May 3, 1993, applicants filed a continuation application that was assigned Serial No. 08/056,501.  This application ultimately issued as the '277 patent on August 2, 1994.  The '277 patent is based on the 557-page 1987 application.  The '501 application did not incorporate by reference any part of the original 44-page application that was filed in 1981.

68.     On June 7, 1995, applicants filed a continuation application that was assigned Serial No. 08/480,060.  This application ultimately issued as the '243 patent on March 23, 1999.  The '243 patent is based on the 557-page 1987 application.  The '060 application did not incorporate by reference any part of the original 44-page application that was filed in 1981.

69.     The 1987 application did not incorporate by reference any part of the 1981 application and the 1981 and 1987 applications describe largely different subject matter. Applicants failed to disclose these highly material facts regarding the 1987 application during prosecution of the '825, '414, '654, '277, and '243 patents to improperly induce the USPTO into treating claims based upon the disclosure of the 1987 application as supported by the disclosure of the 1981 application.  Indeed, the primary examiner of the Harvey portfolio stated that a pattern of intentional misrepresentations of the legal application of Sections 120 and 112 permeates the Harvey portfolio.

70.     Applicants also pursued international patent rights.  On August 9, 1988, applicants filed a Patent Cooperation Treaty ("PCT") Application (PCT/US88/0300) claiming priority to the 557-page application that was first filed in 1987 (and that ultimately issued as the '825 patent).  The PCT did not claim priority to the 44-page application filed in 1981.  The PCT application was published on August 22, 1990 (W0 89/102682), and it states that the "priority date" is "11 September 1987."  The published claims of the PCT application are very similar to the claims that were pursued and later issued as the '825 patent in the United States.  Thus, statements made in Europe regarding the priority of the PCT claims were highly material to the examination of the claims in the United States.

71.     During prosecution of the applications that issued as the '825, '654, '277, and '243 patents, applicants did not inform the USPTO of the priority claim in the PCT application to only the 1987 application.

72.     On information and belief, PMC did not claim the benefit of the 1981 application in Europe because doing so would have precluded patentability in that

jurisdiction.  Specifically, if the 1981 application disclosed the claims of the PCT

application, which it does not, the 1981 application would have rendered the PCT claims

unpatentable because the PCT was filed more than a year after the 1981 application.  To

obtain a patent in Europe applicants stated that the European claims were supported by

the 557-page 1987 application, not the 44-page 1981 application.  This argument is

inconsistent with what applicants have argued to the USPTO in the United States.

73.    Applicants and applicants' U.S. patent counsel, including at least Thomas

Scott, Jr., were aware of the priority claims of the PCT application.  Indeed, in litigation

filed by Personalized Mass Media Corp. ("PMMC"), a predecessor-in-interest to PMC, in

the Eastern District of Virginia, asserting some of the same Asserted PMC Patents, the

Court noted that Thomas Scott, Jr. was deeply involved in PMC's patent prosecution

efforts both in the United States and abroad during the relevant timeframe.  The Court

cited "literature prepared by PMMC for use in raising capital," which stated:

> [Mr. Scott] has advised John Harvey about the filing and
> prosecuting of the Company's patent position since the late
> 1970's.  He is the expert on all aspects of the Company's
> patent position: including the disclosures on file in the U.S.
> Patent and Trademark Office, the disclosures associated
> with the Company's patent applications in Europe, Japan
> and else-where and the Company's development of its
> future patent prosecution strategy.

*Personalized Mass Media Corp. v. The Weather Channel, et al.*, 899 F. Supp. 239, 241-

42 (E.D. Va. 1995).  Applicants and applicants' counsel failed to disclose the material

1987 priority assertion made in the PCT application in order to inconsistently assert in the

United States that claims before the USPTO were entitled to the priority date of the 1981

application.

74.     At least five oppositions were filed against the PMC European patent in the European Patent Office.  These oppositions were filed no later than March 3, 1998.  The PMC applicants filed a response to these oppositions on January 8, 1999.  In that response, applicants argued that the 1987 application contained "improvements" to the 1981 application and that the claims of the European patent were directed to those "improvements."  Applicants argued that each claim contained "at least one essential element of the additional subject matter" found in the 1987 application but *not* the 1981 application.  None of the five oppositions was provided to the USPTO during the then-ongoing prosecution of the '243 patent application.  PMC's response to the oppositions was also not disclosed to the USPTO.  On information and belief, neither were these materials submitted to the USPTO during the prosecution of other Harvey patent applications nor the reexaminations of the Asserted PMC Patents.  The arguments made in the European oppositions and the arguments made in response by PMC were material to the pending claims in the United States.

75.     These material omissions regarding the priority of the claims that issued in the '825, '414, '654, '277, and '243 was an attempt to avoid material, non-cumulative intervening prior art and occurred with an intent to deceive the USPTO.  These actions constitute inequitable conduct that renders these patents unenforceable.

76.     In the United States, applicants also submitted large numbers of references, some unquestionably irrelevant, within which highly relevant references were effectively buried.  For example, during prosecution of the '277 patent, over 200 references were submitted to the examiner.  During prosecution of the '243 patent, more than 700 references were submitted to the examiner.  Examples of these numerous

irrelevant citations include:  U.S. Patent No. 33,186 (Dougal *et al.*), which issued in 1861

and is entitled "Improvement in Bee-Hives"; U.S. Patent No. 2,731,197 (Parker *et al.*),

which issued in 1956 and is directed to an improved "stop pin box" used to control

"calculator actuators" in accounting machines; and U.S. Patent No. 4,473068 (Oh), which

issued in 1982 and is directed to an improved implant "for use in retention of the greater

trochanter" in hip replacements.

     77.     The voluminous disclosures contained highly relevant references, but

applicants did not bring particularly material references to the attention of the examiner.

For example, during prosecution of the '277 patent, applicants submitted a

"supplemental" information disclosure statement dated November 4, 1993.  That

statement included approximately 175 references, including U.S. and foreign patents and

several articles.  In what was alleged to be an effort to "assist" the examiner, applicants

later submitted a chart that allegedly categorized the references into approximately 20

non-exclusive "groups" and purported to identify which "groups" were relevant to the

pending claims.  Within this disclosure were several material references, including:  U.S.

Patent Nos. 3,886,302 (Kosco), 4115,662 (Gulnet *et al.*), 4,186,413 (Mortimer),

4,295,223 (Shutterly), 4,305,101 (Yarbrough *et al.*), 4,323,922 (den Toonder *et al.*),

4,390,901 (Keiser), and 4,488,179 (Kruger *et al.*).  Applicants did not describe the

disclosure of *any* of these references.  Each of these references was later found by the

USPTO to raise a substantial new question of patentability as to one or more of the

claims of the '277 patent in reexamination proceedings.  Applicants deliberately buried

highly relevant references within voluminous, and often irrelevant, references in an effort

to prevent proper examination of the claims and did so intending to deceive the USPTO.

78.     Additionally, during the prosecution of the '825 patent, applicants submitted a "Supplemental Information Disclosure Statement" *after* allowance of certain claims.  Applicants stated:

> Applicants do not consider the references listed on the Form PTO-1449 to be material to or to affect the patentability of the allowed claims in the application.  The references came to applicants' attention in the period since the submission of the January 29, 1990 Amendment. Applicants realize that, under MPEP Section 609, the examiner is not required to consider the cited references. Applicants do not consider any action by the examiner necessary.  The new references are cited solely to complete the record before the Patent and Trademark Office (PTO).

79.     Among the allegedly immaterial references was U.S. Patent No. 4,488,179 to Kruger et al.  As to this reference, applicants stated:  "The Kruger system … does not impact the patentability of the claims as allowed."  During reexamination of the '825 patent, however, the USPTO determined:  "It is agreed that the consideration of U.S. Patent No. 4,488,179 to Kruger et al. raises a substantial new question of patentability as to claim 14 of the instant Harvey et al. patent."  The examiner further stated:  "The Kruger et al. reference is not cumulative with respect to the prior art of record cited in the patented file.  There is a substantial likelihood that a reasonable examiner would consider the teachings of Kruger et al. important in deciding whether or not claim 14 of Harvey et al. [#4,965,825] is patentable."  Applicants belatedly disclosed and deliberately mischaracterized the material Kruger et al. reference in an effort to deceive the USPTO to obtain claims that were not in fact patentable.  The Kruger et al. patent was not ultimately considered by the examiner during prosecution of the '825 patent.

80.     The continuation-in-part application that was filed in 1987 and that led to

the '825, '654, '277, and '243 patents includes a 557-page specification that was submitted

to overwhelm the examiner and prevent effective review of the applications by the

USPTO.  As an example, due to the length of the 1987 application, it is difficult to assess

issues such as written description and enablement.  Additionally, the length of the

specification makes it very difficult to determine what subject matter is common to the

1981 and 1987 applications.

81.     Applicants also submitted numerous claims during prosecution of the

Harvey applications.  For example, during prosecution of the claims that ultimately

issued as the '825 patent, the examiner objected to the 100+ claims on indefiniteness

grounds:  "Taken as a whole the claims recite an undue multiplicity which by virtue of

the unreasonable number of claims presented tends to obfuscate and confuse the claimed

invention."  During prosecution of the '243 patent, the examiner noted that in the 300+

pending applications, "it is estimated that there may be between 10,000 and 20,000

claims."  The numerous claims were submitted to overwhelm the examiner and to

preclude effective review of the applications by the USPTO.  The burden on the USPTO

was exacerbated by the large number of references submitted by applicants during

prosecution and the 557-page 1987 application.  These actions were undertaken with an

intent to deceive the USPTO into allowing claims that were not actually patentable.

82.     On information and belief, during prosecution of the application that led to

the '243 patent, applicants failed to inform the USPTO of litigation related to the Asserted

PMC Patents.  The M.P.E.P. states that "[w]here the subject matter for which a patent is

being sought is or has been involved in litigation, the existence of such litigation and any

other material information arising therefrom must be brought to the attention of the

Patent and Trademark Office."  § 2001.06(c) (6th ed., Jan. 1995).

83.     On March 9, 1995, PMMC filed a lawsuit against The Weather Channel

and multiple cable television companies in the U.S. District Court for the Eastern District

of Virginia.  *PMMC v. Weather Channel, Inc.*, *et al.*, Civil Action No. 95-cv-00242

(REP) (E.D. Va. 1995).  On November 13, 1996, PMC filed suit in the U.S. District

Court for the Northern District of California against various defendants.  *PMC v.*

*Thomson Consumer Elecs., et al.*, Civil Action No. 96-cv-20957 (SW) (N.D. Cal. 1996).

PMC also initiated an investigation in the International Trade Commission against the

same defendants accused of infringement in the Northern District of California action.  *In*

*the Matter of Certain Digital Satellite System (DSS) Receivers and Components Thereof*,

Inv. No. 337-TA-392 (ITC 1996).  Each of these actions involved one or more of the

Asserted PMC Patents.

84.     On June 7, 1995, applicants filed a continuation application that ultimately

issued as the '243 patent on March 23, 1999.  During prosecution of the application

resulting in the '243 patent, the applicants, through their patent attorney, intentionally

failed to disclose relevant information regarding these three cases to the USPTO, despite

having actual knowledge of the cases and despite the fact that litigation was ongoing

during prosecution of the application leading to the '243 patent.

85.     Applicants' failure to disclose relevant facts regarding one or more of

these cases involving the Asserted PMC Patents was deliberate and was intended to

deceive the USPTO.  Applicants' failure to disclose such information constitutes

inequitable conduct that renders the '243 patent and/or additional patents and applications in the Harvey portfolio unenforceable.

86.     Applicants also failed to comply with the rules and regulations regarding payment of fees as a small or large entity and did so in bad faith.  Such failure constitutes fraud on the USPTO.  The M.P.E.P. states that "[s]mall entity status must not be established unless the person or persons signing the verified statement can unequivocally make the required self-certification."  § 509.03 (6th ed., Jan. 1995).  The duty is ongoing and must be made upon the occurrence of certain events, including the payment of maintenance fees.  37 C.F.R. § 1.28(b) (1995) ("Notification of any change in status resulting in loss of entitlement to small entity status must be filed in the application or patent prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate.").  "[A]ny attempt to improperly establish status as a small entity will be viewed as a serious matter by the [PTO]" ( M.P.E.P. § 509.03 (6th ed., Jan. 1995)) and improper claiming of such status may be considered to be fraud on the USPTO.  37 C.F.R. §1.28(d)(2) (1995) ("Improperly and with intent to deceive (i) Establishing status as a small entity, or (ii) Paying fees as a small entity shall be considered as a fraud practiced or attempted on the Office.").

87.     The applicants had actual knowledge that claiming small entity status for the Harvey patent applications was inappropriate by December 1994, at the latest.  In January 1995, after allowance of the claims of the '277 patent, a document entitled "Notification of Change in Status Under 27 C.F.R. § 1.28(b) and Payment of Issue Fee

Deficiency Under 37 C.F.R. § 1.28(c)" was submitted by applicants.  That submission

stated:

> Pursuant to 37 C.F.R. § 1.28(c), Attorneys for Applicants
> hereby provide notification that Personalized Mass Media
> Corporation ("PMMC"), the assignee of U.S. Patent No.
> 5,335,277, no longer qualifies for small entity status under
> M.P.E.P. § 509.02 and 37 C.F.R. § 1.9 for paying reduced
> patent fees for U.S. Patent No. 5,335,277.  PMMC lost its
> entitlement to small entity status for U.S. Patent No.
> 5,335,277 in March, 1994 as a result of a license agreement
> with a large entity.  Applicants and Attorneys for
> Applicants were unaware that PMMC lost its entitlement to
> small entity status in March, 1994 and inadvertently paid
> the reduced issue fee for U.S. Patent No. 5,355,277 on May
> 12, 1994 claiming small entity status.

88.     A verified statement from applicants' counsel, Thomas Scott, Jr., was

submitted in support of this document.  It purported to explain "how the error in good

faith occurred."  In the verified statement, Mr. Scott stated that PMC was not actually

entitled to small entity status as of March 1994, and that he did not realize that fact until

December 1994.  On information and belief, PMC also had licenses with other large

entities by January 1996.

89.     Any such agreements would have been relevant to the claiming of small

entity status for the Asserted PMC Patents and patent applications as of the dates of the

agreements.  On information and belief, PMMC and Sony entered into a license

agreement on October 31, 1995, and PMMC and The Weather Channel entered into a

license agreement on January 31, 1996.

90.     Applicants failed to pay the proper maintenance fees for the '725, '825,

'414, and '654 patents.  For example, small entity status was improperly claimed in 1994

and 1998 for the '825 patent, in 1995 and 1999 for the '725 patent, in 1995 and 1999 for

the '414 patent, and in 1997 for the '654 patent.  Thus, over a period of several years,

applicants repeatedly and improperly claimed small entity status despite having actual

knowledge that such claims were improper.  Moreover, applicants improperly claimed

small entity status for the application (filed June 7, 1995) that ultimately issued as the

'243 patent.  Applicants also improperly claimed small entity status for pending

application 08/466,894, filed on June 6, 1995.  Applicants further improperly claimed

small entity status for many other Harvey patent applications filed in 1995.

91.     In May and June 2000, applicants belatedly asserted that the status as a

small entity "has been changed" and that small entity fees were inappropriate.  Applicants

filed a "Notification of Change of Status and Payment of Additional Maintenance Fee"

for these issued patents, and those submissions were accepted by the USPTO.  However,

in these submissions, applicants did *not* indicate to the USPTO that the supposed error

had been discovered approximately five years earlier, in late 1994, or that they had

previously filed a verified statement regarding the supposed errors.  Applicants also did

not provide an explanation for the repeated small entity status errors or explain why they

did not correct the errors years earlier.

92.     Applicants had a duty to investigate the propriety of the small entity

claims each time a maintenance fee was paid (and each time a patent application was

filed), and applicants had actual knowledge that such claims were improper no later than

1994.  Applicants concealed this knowledge and the true facts regarding the improper

assertion of small entity status in order to mislead the USPTO into concluding that the

errors were made in good faith and could therefore be excused under 37 C.F.R. § 1.28(c)

(1995).  The small entity fees paid from 1994 to 2000 were neither established nor paid in

good faith, and this scheme of improperly claiming small entity status constitutes fraud on the USPTO.

93.     Between March 2, 1995 and June 7, 1995, applicants filed hundreds of applications that claimed the benefit of the original 1981 application.  In an effort to avoid the GATT amendments in 1995 that provided for a 20-year term from the filing of the first application (rather than 17 years from issuance of the patent), PMC filed more than 300 applications in the USPTO.  Many of those applications were later abandoned. PMC's actions in the USPTO caused the examiner to issue a remarkable communication. In the 38-page document, the examiner stated that applicants had engaged in a systematic strategy to mislead and overwhelm the USPTO, and did so intending to deceive the USPTO.  The communication was filed in several applications, including Serial No. 08/113,329 on January 26, 2001, and it describes a broad pattern of conduct in which the applicants engaged for many years.  A copy of the examiner's communication is attached as Exhibit A.

94.     In the communication, the examiner stated:  "Applicants and their counsel (Thomas Scott, Jr.) have been attempting to secure patents by pursuing their unique, but improper, prosecution strategy for many years…. Applicants' prosecution 'strategy' has involved the submission of tens of thousands of claims, as well as thousands [of] prior art references, a substantial number of which are irrelevant."  (*Id*. at 3.)  The Examiner stated that the files of the various Harvey Patents "are replete with a pattern of material misrepresentations of law and related factual omission.  As a consequence, the portfolio prosecution record adds up to a virtually meaningless record as to the merits and thus, among other things, has caused unjustifiable and prejudicial delay."  (*Id*. at 7.)  The

examiner stated his belief that these actions were not unintentional: "For the purpose of protecting the public interest, the primary examiner states for the record that he firmly believes it was the principal counsel's intent to mislead the U.S.P.T.O." (*Id*. at 15.)

95.     As to the priority issue, the examiner stated that applicants knew or should have known that "continuity of disclosure" was required for a claim to be entitled to the filing date of an earlier application. (*Id*. at 11.)  The examiner noted that the Administrative Law Judge in an ITC action involving the same patents "reproached applicants for improperly identifying written description from the 1981 44-page parent specification" and that they received judicial notice that "the written description for applicants' claims is necessarily found in the 1987 557-page specification not the 1981 44-page specification." (*Id*. at 12.)  The examiner stated that the applicants' arguments regarding priority "do not appear to be *bona-fide*" and that applicants' submissions "misstate the legal test" for priority. (*Id*.)  Moreover, "the primary examiner and other U.S.P.T.O. examiners have relied in good faith" on applicants' misstatements and omissions. (*Id*. at 14.)  The examiner stated that applicants engaged in "a blatant attempt to obtain literal patent coverage claiming priority to 1981 for something that they did not have in their possession as of the 1981 filing date." (*Id*. at 30.)  These acts, and others, "caused unjustifiable and prejudicial delay" and are "grounds for rejections of the claim on the basis of laches." (*Id*. at 14.)

96.     As to the extraordinary number of claims presented during prosecution, the examiner noted that a "conservative" estimate is that applicants presented "between 18 and 36 claims per page of the 1987 description; i.e., about one claim for every 8.5 to

17.7 words." (*Id*. at 19.)  The examiner concluded:  "The number of claims filed by applicants has caused unjustifiable and prejudicial delay." (*Id*.)

97.     The examiner noted that during prosecution of the application then under consideration, "applicants have filed approximately 2,200 references, many of which are irrelevant" (*Id*. at 20) and noted that some foreign references were not accompanied by statements of relevance or translations and were therefore in violation of USPTO rules. Among the irrelevant references was a patent to a beehive and another to business cards. (*Id*.)  The examiner concluded:  "These, among other references, create an onerous burden on the U.S.P.T.O. and have caused unjustifiable and prejudicial delay." (*Id*.)

98.     The examiner also noted that applicants had simultaneously claimed small and large entity status for similar subject matter.  (*Id*. at 31-36.)  The examiner noted that the USPTO had requested an explanation for the varying payments, but had not received an explanation.  (*Id*. at 31.)  The examiner stated that there did not appear to be a difference in the subject matter of the varying claims to small or large entity status and that entity status was inconsistently claimed even within applicants' subject matter groupings.  The examiner further noted that applicants' counsel had discussed the small/large entity issue with the USPTO "at least as early as August 13, 1995" (*Id*. at 34) and observed that applicants changed the claimed entity status even within the same application.  (*Id*.)

99.     The examiner noted that applicants seemed to have tried to justify the inconsistent claims of small/large entity on a "field of use" clause in a license agreement. The examiner stated:

> However, over the duration of many months, applicants'
> 'strategy' has included a pattern of changing one or another

of the portfolio's 329 applications to and from small and
large entity.  Further, the portfolio fee payment record
reflects applicants' counsels signing both small and large
fee transmittal letters for the portfolio on the same day.
The fact that the same counsel would sign apparently
contradictory fee transmittal letters for both of applicants'
portfolios' large and small inventions, claiming the same
subject matter, does not appear to be inadvertent.

(*Id*. at 35.)  The examiner also noted that applicants paid a number of deficient fees in

2000, despite the fact that applicants' counsel was made aware of the issue in a personal

interview with a USPTO examiner years earlier.  (*Id*. at 36.)

100.    The examiner also noted other issues, including applicants' untimely

preliminary submissions (*id*. at 20), applicants' filing of substantially duplicate claims in

different applications (*id*. at 20-21), failure to alert examiners handling different Harvey

applications of prior art rejections of the same or similar claims in other applications (*id*.

at 21), attempting to obtain different interpretations of prior art references from different

examiners (*id*. at 24), failing to alert examiners to conflicts between applications directed

to the same subject matter but assigned to different examiners (*id*. at 24-25), and failing

to comply with an agreement with the USPTO to consolidate the many Harvey

applications into fewer applications (*id*. at 31).

101.    Applicants filed a response to the communication.  The USPTO later

determined that the statements in the communication were not related to patentability of

the subject matter claimed in the then-pending applications and, therefore, the

communication was withdrawn on procedural grounds.  The USPTO did not state that

any of the facts contained in the communication were inaccurate.

102.    As a result of the huge 1987 application, enormous number of cited

references, thousands of claims, and hundreds of applications, the examiners were likely

forced to rely to a greater extent than usual on the disclosures and representations of applicants and applicants' counsel.  And, as described herein, those disclosures and representations were incomplete and misleading.

103.    These actions relating to the Asserted PMC Patents and patent applications have occurred over a period of many years and evidence a systematic and improper strategy of prosecution.  These actions are material to patentability, were part of a deliberate plan designed to overwhelm and mislead the USPTO, and were done with an intent to mislead the USPTO.  Each of the Asserted PMC Patents is rendered unenforceable by the inequitable conduct associated with each patent and is also rendered unenforceable by the inequitable conduct associated with the other Asserted PMC Patents.

104.    The actions with regard to the applications in the Harvey portfolio render all of the patents in the portfolio unenforceable due to inequitable conduct.

## TENTH AFFIRMATIVE DEFENSE
### (PROSECUTION LACHES)

105.    On information and belief, the relief sought by PMC is barred in whole or in part by the doctrine of prosecution laches as recognized by the Unites States Court of Appeals for the Federal Circuit in *Symbol Techs., Inc. v. Lemelson Med. Educ. & Res. Found. LP*, 277 F.3d 1361 (Fed. Cir. 2002).

## ELEVENTH AFFIRMATIVE DEFENSE
### (INTERVENING RIGHTS)

106.    On information and belief, the relief sought by PMC is barred in whole or in part by the failure to pay maintenance fees on the '825 Patent and the '277 Patent.

**TWELFTH AFFIRMATIVE DEFENSE**
**(LICENSE)**

107.    On information and belief, the relief sought by PMC is barred in whole or in part due to a license.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(DOUBLE PATENTING)**

108.    On information and belief, the relief sought by PMC is barred in whole or in part under the doctrine of double patenting.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(NO ENTITLEMENT TO INJUNCTIVE RELIEF)**

109.    Plaintiff is not entitled to any injunctive relief as it, as a minimum, has an adequate remedy at law and has not suffered any irreparable injury.

**RIGHT TO AMEND DEFENSES**

Motorola reserves the right to amend its answer to assert further defenses based on future discovery in the lawsuit.

**COUNTERCLAIMS**

For its counterclaims, Motorola states as follows:

**PARTIES**

1.    Counterclaimant Motorola is a Delaware corporation with its principal place of business in Schaumberg, IL.

2.    On information and belief, Counterclaim Defendant PMC is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, NY.

## JURISDICTION AND VENUE

3.     This is an action for declaratory judgment of non-infringement, invalidity,

and unenforceability of United States Patent Nos. 4,965,825; 5,109,414; 5,233,654;

5,335,277; and 5,887,243 (hereinafter collectively "the Asserted PMC Patents") arising

under the patent laws of the United States, 35 U.S.C. § 1 *et seq*, and the Declaratory

Judgment Act, 28 U.S.C. §§ 2201-2202.  Therefore, this Court has subject matter

jurisdiction over Motorola's Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a),

2201, and 2202.

4.     Personal jurisdiction is proper in this district.  PMC has consented to

jurisdiction in this district by filing suit against Motorola in this Court.

5.     Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c).  PMC

has consented to jurisdiction in this district by filing suit against Motorola in this Court.

By asserting these Counterclaims, Motorola does not waive and expressly preserves its

objections to venue with respect to PMC's Amended Complaint in this action.  *Rates*

*Technology, Inc. v. Nortel Networks Corp.*, 399 F.3d 1302 (Fed. Cir. 2005).

## GENERAL ALLEGATIONS

6.     On February 19, 2008, PMC filed suit against Motorola claiming

infringement of the Asserted PMC Patents.

7.     A justiciable controversy exists between PMC and Motorola concerning

the infringement, validity, and enforceability of the Asserted PMC Patents.

## FIRST COUNTERCLAIM
## (DECLARATORY JUDGMENT OF NONINFRINGEMENT)

8.     Motorola incorporates paragraphs 1-7 as if fully set forth herein.

9.      Motorola has not infringed and does not infringe the Asserted PMC Patents.

10.      Motorola is entitled to a declaratory judgment of noninfringement of the Asserted PMC Patents.

## SECOND COUNTERCLAIM
### (DECLARATORY JUDGMENT OF INVALIDITY)

11.       Motorola incorporates paragraphs 1-10 as if fully set forth herein.

12.      Each claim of each of the Asserted PMC Patents is invalid for failure to comply with the conditions and requirements of patentability set forth in the patent statutes, including 35 U.S.C. §§ 101, 102, 103, and/or 112.

13.      Motorola is entitled to a declaratory judgment that each of the Asserted PMC Patents is invalid.

## THIRD COUNTERCLAIM
### (DECLARATORY JUDGMENT OF UNENFORCEABILITY)

14.      Motorola incorporates paragraphs 1-13 as if fully set forth herein.

15.      Upon information and belief, the Asserted PMC Patents are void and unenforceable due to inequitable conduct at the United States Patent and Trademark Office as described in Motorola's affirmative defenses.

16.      Motorola is entitled to a declaratory judgment of unenforceablity of each of the Asserted PMC Patents.

## REQUEST FOR RELIEF

WHEREFORE, Motorola prays for judgment that:

17.      PMC's Amended Complaint be dismissed in its entirety with prejudice;

18.      PMC is not entitled to the relief prayed for in its Amended Complaint, or

to any relief whatever;

19.    Each of the Asserted PMC Patents has not been infringed and is not infringed by Motorola;

20.    Each of the Asserted PMC Patents is invalid;

21.    Each of the Asserted PMC Patents is unenforceable;

22.    No damages or royalties are due or owed by Motorola for any of the acts alleged by PMC in its Amended Complaint;

23.    Motorola be awarded reasonable costs and its attorneys fees pursuant to 35 U.S.C. § 285; and

24.    Motorola be awarded such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Motorola demands a trial by jury for all issues so triable.

Dated: June 18, 2010        Respectfully submitted,

By: *_/s/ Charles K. Verhoeven, with permission by Michael E. Jones_*
Michael E. Jones
State Bar No. 10929400
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas 75710
(903) 597 8311
(903) 593 0846 (Facsimile)
mikejones@potterminton.com

OF COUNSEL:
Charles K. Verhoeven
charlesverhoeven@quinnemanuel.com
Christopher E. Stretch

chrisstretch@quinnemanuel.com
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
50 California Street
22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

ATTORNEYS FOR DEFENDANT
MOTOROLA, INC.

## CERTIFICATE OF SERVICE

    I hereby certify that all counsel of record who have consented to electronic

service are being served with a copy of this document via the Court's CM/ECF system

per Local Rule CV-5(a)(3) on this the 18th day of June, 2010. Any other counsel of

record will be served by First Class U.S. Mail on this same date.

*/s/ Michael E. Jones*
Michael E. Jones